**In re Minor Child DAVID.**

Supreme Judicial Court of Maine.

Aug. 29, 1969.

Franklin F. Stearns, Jr., Portland, for petitioner.

Arthur A. Peabody, Portland, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE and WEATHERBEE, JJ.

WEATHERBEE, Justice.

This is a petition for the Writ of Habeas Corpus brought by the mother of an illegitimate child against the Executive Director of a licensed child-placing agency to whom she had surrendered her parental rights in her child so that the agency might place the child for adoption. A Single Justice in the Superior Court ruled that the surrender-release was invalid and that the best interests of the child required its return to the mother. The Defendant's appeal brings the matter before us.

Written briefs were presented to the Court by counsel for both parties but before oral argument counsel for the Petitioner informed the Court that his client had concluded that her child's interests would be better served if the child remained with the prospective adoptive parents in whose home he had lived for some nine months and asked that the adoption should proceed to completion.

Although the Petitioner no longer wishes to prosecute her petition and defend the judgment of the Single Justice we agree with counsel for the Defendant that her brief has presented two issues the determination of which is necessary to the successful operation of our adoption processes. We feel that this appeal is an appropriate vehicle for clarification of the situation. The Petitioner has contended:

1) That the surrender-release is invalid, as the Justice found, because she executed the surrender-release before the Judge of Probate had determined that such action was in the best interests of all parties.

2) That even if the surrender-release is valid, the mother may revoke her action before the adoption has been completed.

The Petitioner was at the time in question a twenty-six year old unmarried mother of a year old child. Convinced that circumstances would continue to prevent her giving her child the care, benefits and environment that she felt the child should have she decided to explore the possibilities of adoption. She telephoned the Defendant agency on August 15 giving an assumed name and discussed with a social worker the agency's policy and procedures in adoptions and also the alternate possibility of Petitioner receiving Aid for Dependent Children from the State. On August 20 she conferred with the worker giving her correct name and disclosing her situation fully and with candor. She concluded that her child's best interests would be served if he was to be adopted and requested that he should go directly from her to the adoptive parents in order to spare the child the confusion of an interim placement in a foster home. Pursuant to Agency policy, arrangements were then made for a physical examination of the baby and for doctors' reports. Some details were discussed by telephone on another day and the Petitioner, who had now concluded that she was taking the steps which would most benefit her child, discussed the matter with her own parents.

On September 6 she went again to the Agency with her child. Arrangements had been made for the prospective adoptive parents to be available to take the child promptly when and if the Petitioner executed the surrender. Petitioner went with the Director of the Agency to the law office of the Judge of Probate in a nearby city. There the Judge gave the Petitioner what, from the witnesses' description, would appear to have been a full explanation of the permanent effect of the proposed surrender-release, emphasizing several

times the seriousness of the act. The Petitioner told the Judge that she understood all this, that it was her own decision and that she believed she was taking the correct steps for the child's best interests. The Petitioner then signed the document which surrendered and released all parental rights to the child to the Agency and the Judge signed the document which recites his approval of the surrender-release.

A few days later the Petitioner concluded that her surrender had been a mistake and that she wished the return of her child. She consulted an attorney and on September 18 she wrote the Agency "revoking" her release and demanding her child's return. She wrote the Judge of Probate the same day "rescinding" consent to the child's adoption.

The Petitioner does not contend that her signature to the surrender-release was obtained as a result of fraud, duress, mistake or incapacity. She simply took an action which she later regretted having taken.

In December she brought the present Petition for the Writ of Habeas Corpus which was heard by a Justice in the Superior Court. The Justice, after hearing, ruled that the surrender-release was invalid and ordered that the child should be returned to the Petitioner but stayed that order pending this appeal to avoid the possibility of several dislocations of the child in his environment. The child has remained with the prospective adoptive parents but the adoption has not been completed.

*The First Issue.*

Chapter 9 of Title 19 of our Revised Statutes deals with our adoption procedure. Section 532 provides that consent to an adoption may be given by the mother of an illegitimate child. In 1941 the Legislature, attempting to facilitate the mutual efforts of unmarried mothers and worthy institutions to find homes for illegitimate children when needed with the minimum of abrasion to the sensibilities of natural parent, child and adopting parents enacted P.L. 1941 section 287, now, as amended, the latter provisions of section 532. These provisions concerning surrender and release follow:

"* * * [T]he mother if such child be illegitimate, with the approval of the judge of probate of any county within the State and after a determination by such judge of probate that a surrender and release is for the best interests of all parties, may surrender and release all parental rights in and to such child and the custody and control thereof to an incorporated * * * society * * * child placing agency * * * for the purpose of enabling such * * * society * * to have such child adopted by some suitable person. * * * The effect of this surrender and release shall be fully explained by the judge of probate to the parent * * *. The surrender and release approved as aforesaid shall be filed with the petition of adoption of said child in the probate court. In such cases the consent to adoption may be given by such incorporated society * * * or home * * *."

Petitioner's release and the approval of the Judge of Probate were executed on Probate Form No. 66C. The Judge's approval reads:

"STATE OF MAINE
* * * * * *
York, ss.

The individual who executed the above SURRENDER AND RELEASE, having appeared before me and acknowledged that she executed the foregoing instrument as her act and deed by her own free will for the purpose therein mentioned: and,

NOW having considered the circumstances connected with the foregoing SURRENDER AND RELEASE and having fully explained the effect thereof to said [name deleted]; it is hereby determined that such SURRENDER AND RELEASE is for the best interests of all parties concerned; and,

NOW, therefore, said SURRENDER AND RELEASE is hereby approved in accordance with Title 19 M.R.S.A. Sections 531 to 538."

█ The Justice in the Superior Court held that the surrender-release was invalid because requirements of section 532 had not been met. This conclusion appears to have been based in part upon a faulty remembrance of the evidence. It was the Justice's recollection that Petitioner had signed the surrender-release prepared by the Agency at the Agency office before she went before the Judge of Probate to receive his explanation of its significance and the Justice said he found no affirmative proof that she had been told by him that she could still revoke her act before the Judge gave his approval to the surrender. The Justice also noted that Probate Form No. 66C recites that the surrender had already been executed before the Judge of Probate gave his approval which, he found, in itself acknowledges a failure to comply with that part of section 532 which requires the Judge's approval *before* the mother may surrender her rights. However, the record (the benefit of which the Justice apparently did not have) disputes the Justice's recollection and discloses that the Petitioner in fact executed the surrender in the Judge's office and only after receiving from him a full explanation of the effects of her act.

█ We have recognized that a Probate Court's power to decree an adoption is purely statutory and fails if any *essential* requirement of the statute is not complied with. Blue et al. v. Boisvert, 143 Me. 173, 57 A.2d 498 (1948). The same principle applies in the consideration of a surrender-release given in anticipation of adoption but only a failure to meet statutory requirements in a *substantial* respect would invalidate a surrender-release. In re Adoption of Anderson, 235 Minn. 192, 50 N.W. 2d 278 (1951); Petition of Gonzales, 330 Mich. 35, 46 N.W.2d 453 (1951).

We do not find the phraseology of Form 66C to be at serious variance with the re-quirements of section 532. The statute contemplates a single, concerted act of surrender by the mother and of determination of the child's best interests by the Judge. The mother's act has no validity until she has acknowledged it before the Judge after receiving his full explanation as to its effect. The procedure is still incomplete until the Judge's approval is received but the order in which they sign does not control.

Probate Form No. 66C is one of the blanks the use of which was authorized by statute (4 M.R.S.A. § 351) and approved by this Court on January 26, 1956. It has the force of law. Appeal of Waitt, 140 Me. 109, 34 A.2d 476 (1943); Baker v. Blood, 128 Mass. 543 (1879); In re Lucey, 331 Mass. 292, 118 N.E.2d 762 (1954).

The failure of the recitation of Form 66C to conform precisely with the statute is not such a substantial deviation as would invalidate the surrender.

*The Second Issue.*

█ Since the appearance of governmental and licensed child-placing agencies and societies, many states have enacted provisions for the surrender by parents and by unmarried mothers of their parental rights including the right to consent to the adoption of their children. The statutes substitute the consent of the agency to the adoption of the child for the consent of the parent. The purpose is to improve the Agency's position in the selection of suitable adopting parents, to avoid personal contact between natural and adopting parents which might later hinder the child's adjustment and to give assurance to the prospective adoptive parents in the earlier stages of their undertaking.

Although variation in statutory procedures makes generalization difficult, examination of the decisions of other jurisdictions reveals to us three principal types of treatment of the issue of revocation by the courts.

The statutes of some states make provision for a surrender in the form of a contract between parent and agency under judicial supervision. The language of a New York Court appears to express the attitude of such jurisdictions.

"The consent by a parent to the change of guardianship and custody to an authorized agency for the purpose of adoption or care is expressly sanctioned by law (Social Welfare Law, § 384) and is a valid contract by which the agency undertakes to become responsible for the care and maintenance of the child unless the child is thereafter adopted. People ex rel. Anonymous v. Rebecca Talbot Perkins Adoption Society, Inc., 271 App.Div. 672, 68 N.Y.S.2d 238. But until there has been an actual adoption, it is a contract the continuance of which remains under judicial supervision; and it is clear that the Supreme Court retains power to direct a change of custody from the authorized agency back to the parent notwithstanding the formal document of surrender. (Social Welfare Law, § 383). As Botein, J., noted in People ex rel. Grament v. Free Synagogue Child Adoption Committee, 194 Misc. 332, 85 N.Y.S. 2d 541, the surrender document is "a contract bearing statutory sanction and approval" which "materially alters and diminishes the rights" of a parent 'seeking to regain custody" but "it may not accomplish an irrevocable commitment of custody and guardianship" before actual adoption. 194 Misc. at page 335, 85 N.Y.S.2d at page 543." Application of Handler, 6 A.D.2d 977, 176 N.Y.S.2d 689, at page 691.

Some courts have recognized the necessity for permanency in the act of surrender and denied the mother the power to revoke her surrender but have considered that the Court has an equitable discretion to set aside the surrender if it finds that the surrender would act to the detriment of the child. Ex parte Schultz, 64 Nev. 264, 181 P.2d 585 (1947); In re Brennan, 270 Minn. 455, 134 N.W.2d 126 (1965); In re Surren-der of Minor Children, 344 Mass. 230, 181 N.E.2d 836 (1962).

Other courts consider the surrender to be a completed irrevocable act terminating permanently the parently rights. Petition of Gonzales, supra; In re Adoption of D——, 122 Utah 525, 252 P.2d 223 (1953).

Our own statutes contain no provision for a contract of surrender or for revocation of a surrender which has been completed. Maine is one of the minority of states whose statutes require judicial participation in the surrender and a judicial determination of the correctitude of the surrender. Our statutes provide no appeal from the determination. The reasoning that the mother may revoke her surrender at any time before the adoption has been decreed is fallacious here in view of our statute's treatment of the surrender-release as a completed judicial proceeding rather than as merely a tentative informal preliminary agreement.

Our reasoning is not an abandonment of the position that our primary concern is the best interests of the child, which we have before expressed in other matters involving a child's custody. Merchant v. Bussell, 139 Me. 118, 27 A.2d 816 (1942). The conclusion of some courts that the Court must possess power to set aside a surrender which it finds to be detrimental to the child's welfare does not follow here where our statute has required a determination as to the child's welfare by the Judge of Probate *before* the surrender is complete. (This reasoning would not leave the child without hope of rescue in the event of subsequent cruelty or neglect on the part of the adoptive parents. The Legislature, in enacting 22 M.R.S.A. Chapter 1055 has empowered the courts to act in relief of *all* grossly mistreated children.)

We conclude that the execution of the surrender-release is, when all statutory requirements have been met, a completed act of solemn import, irrevocable by the mother, which can be set aside only by judicial action on the basis of fraud, duress, mistake

or incapacity. (In view of the statute's recital that the surrender is "for the purpose of enabling such * * * society to have such child adopted by some suitable person" we reserve judgment on the issue—not now before us—which might arise if for some reason the society becomes unable to place the child for adoption.)

We arrive at this conclusion fully aware of the probability that some mothers, experiencing the pain of actual separation from their children, may regret their surrender even though it was arrived at after careful deliberation. However, it can easily be realized that child-placing societies will be frustrated in their efforts to find suitable adoptive parents if the child which the adoptive parents have had in their home and which they have come to love as their own may be taken from them in the period between surrender and adoption because of a change of heart on the part of the mother.

Appeal sustained. The Writ of Habeas Corpus is ordered dismissed.

TAPLEY, J., sat at argument but retired before the opinion was adopted.