1998 ME 115

**In re AMANDA N.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 15, 1998.

Decided May 20, 1998.

Glenda Lovell, Kennebunkport, for appellant.

Lloyd P. LaFountain III, LaFountain & LaFountain, Biddeford, Guardian ad Litem.

Andrew Ketterer, Attorney General, Janice S. Stuver, Marilyn E. Stavros, Asst. Attys. Gen., Augusta, for appellee.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

DANA, Justice.

[¶ 1] The mother of Amanda N. appeals from the judgment of the District Court (Biddeford, *Janelle, J.*) that terminated her parental rights to her daughter after she consented to the termination. We conclude that the mother's knowing and voluntary consent to the termination is irrevocable absent a showing of fraud, duress, mistake, or incapacity and accordingly affirm the judgment.

[¶ 2] In July 1994, the Department of Human Services obtained custody of Amanda, who was three years old at that time. Amanda's mother, who suffers from Huntington's disease and related mental health complications, was having difficulty managing her illness and caring for herself and Amanda, prompting the action by the Department. Following a contested hearing on the Department's petition for a child protection order, the court found that despite her love for and total devotion to Amanda, certain "involuntary behavioral changes" resulted in the mother "having difficulty meeting her own needs and [in] not [being] able to take appropriate care of Amanda or keep her safe." After making the required findings that the mother's situation "presents immediate risk of serious harm to Amanda and continues to present circumstances of jeopardy to the health and welfare of Amanda," the court (*Humphrey, J.*) ordered custody of the child to the Department, with contact between Amanda and her mother at the direction of the Department.

[¶ 3] At each of four judicial reviews of the child protection order, the court found that Amanda continued to be in need of protection and maintained her custody with the Department. The Department filed a petition for a termination of parental rights on June 24,

---

1997, and a hearing on the petition was held on October 21, 1997, at which the mother was represented by counsel. Through counsel and personally, the mother expressed her desire to consent to the termination and her understanding of the implications of her decision. After concluding that the mother "very clearly [understood] the nature of [the] proceedings and ha[d] knowingly and voluntarily consented to the termination of her parental rights with respect to Amanda," the court (*Janelle, J.*) found that termination was in Amanda's best interest and ordered the termination. Four weeks later the mother informed her counsel that she had changed her mind about the termination and wished to have a hearing on the matter. This appeal followed.

[¶ 4] It is clear from the record that the mother has made a good faith effort to reunify with Amanda. The court and the Department each recognized her love and devotion for her daughter and went out of their way to acknowledge that her inability to care for Amanda was neither voluntary nor intentional. Nevertheless, we are not willing to provide the mother with the judicial relief she requests.

[¶ 5] Although we have never decided a case directly on point with the one before us, we have held in the analogous context of a parent's surrender and release in an adoption proceeding that the execution of a release of parental rights in order to facilitate an adop-

tion is a "completed act of solemn import ... which can be set aside only by judicial action on the basis of fraud, duress, mistake or incapacity." *In re David*, 256 A.2d 583, 587–88 (Me.1969). The District Court conducted an extensive inquiry into the mother's understanding of the effect of her consent to the termination, and she does not allege on appeal that her consent was not knowing or voluntary. Nor does she "contend that her signature to the [consent to termination] was obtained as a result of fraud, duress, mistake or incapacity. She simply took an action which she later regretted having taken." *Id.* at 585.

[¶ 6] While we recognize the heartwrenching nature of a decision to consent to a termination of one's parental rights, we conclude that a child's interest in the finality of a termination proceeding outweighs a parent's desire to revoke the consent in circumstances where the consent was knowingly and voluntarily executed in the absence of fraud, duress, mistake, or incapacity.

The entry is:

Judgment affirmed.